# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EVA MAZE<br>750 North Tamiami Trail, Unit 1017<br>Sarasota, FL 34236<br><br>SUZANNE BATRA<br>10 Jenkins Street<br>Saranac Lake, NY 12983<br><br>MARGOT LICHTENSTEIN<br>73-37 Austin Street, Apt. 9B<br>Forest Hills, NY 11375<br><br>               Plaintiffs,<br>v.<br><br>INTERNAL REVENUE SERVICE<br>1111 Constitution Avenue, N.W.<br>Washington, D.C. 20224<br><br>JOHN KOSKINEN, in his official capacity<br>as Commissioner of Internal Revenue<br>1111 Constitution Avenue, N.W.<br>Washington, D.C. 20224<br><br>UNITED STATES OF AMERICA<br>c/o The Honorable Loretta E. Lynch<br>Attorney General of the United States of<br>America<br>950 Pennsylvania Ave, N.W.<br>Washington, D.C. 20530<br><br>c/o Vincent H. Cohen , Jr.<br>United States Attorney's Office<br>555 4th Street, NW<br>Washington, D.C. 20530<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Case No.: _____<br><br>**COMPLAINT** |

## INTRODUCTION

1.     The Internal Revenue Service ("IRS") required Plaintiffs Eva Maze, Suzanne Batra, and Margot Lichtenstein to transition from the 2012 Offshore Voluntary Disclosure Program ("2012 OVDP") to the 2014 Streamlined Filing Compliance Procedures ("2014 SFCP") solely through the use of rules mandating that Plaintiffs meet a set of secret, unpublished, and arbitrary criteria, file and pay tax and interest on eight, rather than three, years of amended tax returns, and pay an accuracy-related penalty otherwise inapplicable under the 2014 SFCP (the "Transition Rules"). The application of these Transition Rules purportedly required Plaintiffs, who reported their foreign bank accounts and assets through participation in the 2012 OVDP out of a sense of responsibility and candor, to satisfy monetary and compliance burdens that similarly situated individuals who waited until the 2014 SFCP were announced do not face.

2.     Starting in 2009, the IRS announced a series of offshore voluntary disclosure programs and initiatives to encourage U.S. applicants who had not reported certain offshore income or who had not filed related information returns to resolve these issues with the IRS (generally referred to as "OVDP"). The IRS warned of "dire" consequences for applicants who did not make voluntary disclosures. Statement from IRS Commissioner Doug Shulman on Offshore Income (Mar. 26, 2009), *available at* https://www.irs.gov/uac/Statement-from-IRS-Commissioner-Doug-Shulman-on-Offshore-Income.

3.     Plaintiffs heard these announcements and complied. They applied for and were accepted into one of the iterations of the OVDP, under which they were generally required to pay tax, interest, and accuracy-related penalties for the requisite eight tax years covered by the voluntary disclosure period, plus an additional miscellaneous "offshore penalty" equal to a large portion of

the highest aggregate balance of foreign accounts and the highest value of offshore assets during the applicable eight-year voluntary disclosure period (the "OVDP Penalty Framework").

4.      The terms of the OVDP Penalty Framework were non-negotiable.  Applicants who opted out of the OVDP potentially faced a full-scope IRS examination and the imposition of all applicable civil penalties.  The IRS stated that "opt out [would] be appropriate for a discrete minority of cases."  I.R.S., Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2012, at No. 51 (June 26, 2012), https://www.irs.gov/Individuals/International-Taxpayers/Offshore-Voluntary-Disclosure-Program-Frequently-Asked-Questions-and-Answers (last updated June 10, 2015).

5.      On June 18, 2014, the IRS modified the 2012 OVDP and announced the expanded 2014 SFCP, which allowed an individual who had inadvertently not reported certain offshore income or filed related information returns to correct these errors in exchange for no (or a reduced) offshore penalty if the individual certified that his or her violation was not willful.

6.      In promulgating the 2014 SFCP, the IRS unilaterally and without explanation prohibited individuals who had previously entered the 2012 OVDP (like Mrs. Maze, Mrs. Batra, and Mrs. Lichtenstein) from receiving the benefit of the 2014 SFCP unless they complied with the Transition Rules.  Under the Transition Rules, applicants who previously made a voluntary disclosure under the OVDP were treated worse than similarly situated applicants who waited to make a disclosure under the 2014 SFCP.  If Plaintiffs had been less diligent and simply waited to correct their filings, they would have been eligible for the reduced penalty structure and less-burdensome filing and review procedures of the 2014 SFCP.

7.      The Transition Rules are not the product of notice-and-comment rulemaking, constitute arbitrary or capricious agency action, and injured Plaintiffs, who were subject to increased

monetary payments, filing burdens, and disparate review standards, solely because of the requirements of the Transition Rules. Accordingly, Plaintiffs request the Court to hold unlawful and set aside the Transition Rules, to declare that the Transition Rules are invalid, to declare that Plaintiffs may process their voluntary disclosures through the SFCP, and to enjoin Defendants from enforcing the Transition Rules.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction under 28 U.S.C. § 1331, and this Court has authority to grant the relief requested under 5 U.S.C. §§ 702-706 and 28 U.S.C. §§ 2201, 2202.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because the defendants are officers and agencies of the United States and reside in this district.

## THE PARTIES

10.      Plaintiff Eva Maze is a United States citizen and resident of Florida.

11.      Plaintiff Suzanne Batra is a United States citizen and resident of New York.

12.      Plaintiff Margot Lichtenstein is a dual United States and German citizen and resident of New York.

13.      Defendant Internal Revenue Service is an executive agency of the United States within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 and 701, and a bureau of the United States Department of Treasury, located in Washington, D.C.

14.      Defendant John Koskinen is the Commissioner of the Internal Revenue Service. He is being sued in his official capacity. He serves as the head of the IRS in Washington, D.C.

15.      Defendant United States of America is the federal government formed under the Constitution of the United States of America with its capital in Washington, D.C.

**THE STATUTORY REGIME AND THE PERTINENT ADMINISTRATIVE RULES**

**Foreign Account Reporting Requirements and Enforcement**

16.     In the late 1960s and early 1970, Congress learned that criminals were using foreign bank accounts to further various illegal acts and that foreign governments were uncooperative when U.S. law enforcement agencies requested information about the accounts and accountholders. Congress accordingly enacted the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 (Oct. 26, 1970), to address those concerns.

17.     Some of the provisions of the Bank Secrecy Act required U.S. residents, U.S. citizens, and other persons located and doing business in the United States to "keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency."   31 U.S.C. § 5314. Congress authorized the Secretary of the Treasury to prescribe regulations necessary to carry out the purposes of 31 U.S.C. § 5314.

18.     Congress also authorized the Secretary of the Treasury to impose civil penalties for the violation of 31 U.S.C. § 5314.   31 U.S.C. § 5321(a)(5)(A).   Unless the violation is willful, the civil penalty cannot exceed $10,000.   And no penalty is to be imposed if the violation is due to reasonable cause and the amount of the transaction (or the balance in the account at the time of the transaction) was properly reported.   31 U.S.C. § 5321(a)(5)(B).

19.     If, however, the violation is willful, the reasonable-cause exception does not apply, and the maximum penalty amount is, under more recent amendments, increased to the greater of: (i) $100,000; or (ii) 50 percent of either (a) the amount of the transaction, if the violation involves a transaction, or (b) the balance of the account at the time of the violation, if the violation involves

a failure to report the existence of an account or any identifying information required to be provided regarding an account.  31 U.S.C. §§ 5321(a)(5)(C)-(D).

20.     The Secretary of the Treasury promulgated regulations at 31 C.F.R. § 1010.350 that require "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to report the relationship to the Treasury Department for each year in which the relationship exists.  This is accomplished by filing a Report of Foreign Bank and Financial Accounts ("FBAR") each calendar year for which the person maintained one or more foreign financial accounts exceeding $10,000 in the aggregate during the previous calendar year.  31 C.F.R. § 1010.306(c).

**Offshore Voluntary Disclosure Programs**

**A.      Early Programs**

21.     For decades, the IRS has had a policy allowing individuals to come forward to disclose intentional failures to report lawful source income while resolving their criminal exposure.  This policy was designed to encourage such individuals to regularize their tax and offshore-income reporting affairs and return to voluntary compliance with our laws in a manner that eliminated or at least minimized the potential of criminal prosecution.

22.     In the early 2000s, the IRS began to focus on tax evasion related to offshore income and accounts.   On January 14, 2003, the IRS announced the Offshore Voluntary Compliance Initiative ("OVCI").    I.R.S. News Release IR-2003-5 (Jan. 14, 2003), *available at* https://www.irs.gov/pub/irs-news/ir-03-05.pdf.   The purpose of the OVCI was to encourage individuals to disclose unreported income relating to offshore payment cards or other financial arrangements.  Eligible applicants had to pay back taxes, interest, and certain penalties, but did not face criminal prosecution, the civil fraud penalty, or certain information return penalties (including the FBAR penalty).  Applicants who had not timely filed FBARs were eligible to

6

participate in the OVCI, the deadline for which expired on April 15, 2003.  Rev. Proc. 2003-11,

2003-1 C.B. 311 (Jan. 14, 2003), *available at* https://www.irs.gov/pub/irs-drop/rp-03-11.pdf.

23.     Also in 2003, the IRS announced the Last Chance Compliance Initiative ("LCCI"), which

was an informal, limited amnesty program through which the IRS issued "last chance letters"

(*i.e.*, IRS Letter 3549 (rev. 6-2003)) to U.S. individuals who the IRS identified as holding

offshore credit cards or participating in offshore financial arrangements.  Under the LCCI, the

IRS directed its examiners to apply mitigation principles to avoid excessive penalties.  I.R.M.

Ex.  4.26.16-4  (July  1,  2008),  *available  at*  https://www.irs.gov/irm/part4/irm_04-026-

016.html#d0e1670.

**B.     The 2009 OVDP**

24.     In 2009, in an effort to remedy offshore tax evasion, and in light of increased voluntary

disclosures due to IRS enforcement of foreign-account and foreign-income reporting pursuant to

requirements set forth in Title 26 and in 31 U.S.C. § 5314, the IRS implemented the OVDP with

the stated aims of:  (i) centralizing the processing of offshore voluntary disclosures; (ii) resolving

the cases in an organized, coordinated manner; (iii) offering a uniform penalty structure; (iv)

making exposure to civil penalties more predictable; and (v) ensuring that applicants are treated

consistently and predictably.  I.R.S., Voluntary Disclosure: Questions and Answers, at Q1. and

A1.,  http://www.irs.gov/uac/Voluntary-Disclosure:-Questions-and-Answers  (last  updated  Dec.

18, 2014).

25.     On March 23, 2009, the IRS implemented the first iteration of the OVDP (the "2009

OVDP"), which required applicants who made a voluntary disclosure to file for the six tax years

from 2003 to 2008 all amended or delinquent tax returns and FBARs, to provide an estimate of

unreported income during those years, to submit information pertaining to offshore-account and

asset values, and to describe the purposes and sources behind the offshore account or income.

26.     Under the 2009 OVDP, disclosing applicants were required to pay all unpaid taxes and interest, and accuracy-related penalties or, if applicable, the failure-to-file and failure-to-pay penalties during the six-year period covered by the voluntary disclosure, plus an additional miscellaneous "offshore penalty" equal to 20 percent of the highest offshore account balance (plus the highest value of foreign assets) during the six-year period from 2003 to 2008.   The miscellaneous "offshore penalty" was in lieu of all other penalties, including the 50-percent willful-FBAR penalty and various other information-return penalties.

27.     The IRS issued guidance regarding the 2009 OVDP in the form of Frequently Asked Questions and Answers ("FAQs") on its web site.  I.R.S., Voluntary Disclosure: Questions and Answers,  https://www.irs.gov/uac/Voluntary-Disclosure:-Questions-and-Answers  (last updated Dec. 18, 2014).  The response to FAQ No. 35 provided as follows:

> Voluntary disclosure examiners do not have discretion to settle cases for amounts less than what is properly due and owing.  These examiners will compare the 20 percent offshore penalty to the total penalties that would otherwise apply to a particular taxpayer.  Under no circumstances will a taxpayer be required to pay a penalty greater than what he would otherwise be liable for under existing statutes.

Id. at Q35. and A35.  The "existing statutes" referred to in FAQ No. 35 provide for a reasonable-cause exception to FBAR violations, apply a lower maximum penalty to non-willful violations, and place the burden of proving willfulness upon the IRS.

28.     IRS examiners initially followed the guidance in FAQ No. 35, analyzed reasonable-cause arguments, made determinations of non-willfulness, and, where appropriate, proposed a smaller penalty (or no penalty at all).  Yet despite the plain language of FAQ No. 35, the IRS reversed course in March 2011 and directed examiners not to accept less than the 20-percent offshore penalty regardless of whether "a particular taxpayer" would pay less under "existing statutes." Memorandum from Monica L. Baker, Director, Small Business/Self-Employed Examination,

and Rosemary Sereti, Director, International Individual Compliance, to all OVDI Examiners, Use of Discretion on 2009 OVDP Cases (Mar. 1, 2011), *available at* https://www.irs.gov/pub/irs-drop/ovdi_memo_use_of_discretion_3-1-11.pdf.

29.     The National Taxpayer Advocate decried this change in position, stating that "[t]he IRS materially changed the terms of the 2009 OVDP after taxpayers applied to it in reliance on the original terms, treating similarly situated taxpayers differently."  Memorandum from Nina E. Olson, National Taxpayer Advocate, to Heather C. Maloy, Commissioner, Large Business & International Division, and Faris R. Fink, Commissioner, Small Business/Self-Employed Division, Taxpayer Advocate Directive 2011-1 (Implement 2009 Offshore Voluntary Disclosure Program FAQ #35 and comply with the Freedom of Information Act) at 6 (Aug. 16, 2011), *available at* https://www.irs.gov/pub/irs-utl/taxpayeradvocatedirective_2011-1.pdf.

30.     Through FAQ No. 35, the IRS had provided a mechanism within the context of the 2009 OVDP by which an applicant's particular facts and circumstances could be evaluated to determine willfulness, reasonable cause, and other pertinent issues that allowed for a determination of decreased penalties under "existing statutes," *i.e.*, the laws of this country.  But the IRS abandoned that approach and adopted a rigid position that the miscellaneous "offshore penalty" applied in all but a few narrow circumstances.  Memorandum from Heather C. Maloy, Commissioner, Large Business & International Division, and Faris R. Fink, Commissioner, Small Business/Self-Employed Division, to Steven T. Miller, Deputy Commissioner for Services and Enforcement, Appeal of Taxpayer Advocate Directive 2011-1 (Implement 2009 Offshore Voluntary Disclosure Program FAQ #35 and comply with the Freedom of Information Act) (Aug. 30, 2011), *available at* https://www.irs.gov/pub/irs-utl/sb_lbi_appealtad_2011-1.pdf.

**C.      The 2011 OVDP**

31.      The 2009 OVDP expired on October 15, 2009, but it was so financially successful that the IRS announced the second iteration of the OVDP, the 2011 Offshore Voluntary Disclosure Initiative (the "2011 OVDP"), on February 8, 2011.   As with the 2009 OVDP, participating applicants were required to pay back-taxes and interest, but now for up to eight rather than six years, as well as accuracy-related penalties, or, if applicable, the failure-to-file and failure-to-pay penalties.   Unsurprisingly, the 2011 OVDP increased the miscellaneous "offshore penalty" from 20 to 25 percent of the amount in the year with the highest aggregate account balance in the foreign bank accounts and the highest value of offshore assets during the pertinent eight-year voluntary disclosure period.

32.      Under the 2011 OVDP, very few applicants were eligible for a reduced 5-percent or 12.5-percent miscellaneous offshore penalty.   Applicants holding inactive offshore accounts funded with previously taxed proceeds and certain other non-U.S. residents were eligible for the 5-percent miscellaneous offshore penalty.   Applicants with accounts that never exceeded $75,000 were eligible for the 12.5-percent miscellaneous offshore penalty.   The 2011 OVDP expired on September 9, 2011.

**D.      The 2012 OVDP**

33.      On January 9, 2012, the IRS announced a third iteration of the OVDP (the "2012 OVDP") again increasing the miscellaneous offshore penalty.   Specifically, under the 2012 OVDP, disclosing applicants paid a miscellaneous offshore penalty equal to 27.5 percent of the highest aggregate balance of foreign accounts and the highest value of offshore assets during the prior eight years.   The 5-percent or 12.5-percent miscellaneous offshore penalty remained in effect for the select few applicants who could meet those criteria.

34.     The 2012 OVDP made the OVDP permanent until further notice or modification by the

IRS, which the IRS stated could happen at any time.  I.R.S. News Release IR-2012-5 (Jan. 9,

2012), *available at* https://www.irs.gov/pub/irs-news/ir-12-005.pdf.

**E.      Streamlined Filing Compliance Procedures**

35.     As part of the offshore voluntary disclosure initiative, on June 26, 2012, the IRS

announced the first Streamlined Filing Compliance Procedures ("SFCP") for non-resident, non-

filer U.S. applicants that took effect on September 1, 2012 (the "2012 SFCP").  The 2012 SFCP

was aimed at U.S. individuals living abroad who had not filed U.S. income tax returns or FBARs

and who presented a low compliance risk.  To that end, applicant submissions were subject to

differing degrees of review based on the amount due and the applicant's response to a risk

questionnaire.  Applicants who entered the 2012 SFCP were required to file delinquent tax

returns and related information returns for the past three years and to file delinquent FBARs for

the past six years.  Applicants were to remit payment for the tax and interest, if applicable, along

with delinquent tax returns.

36.     Approximately two years later, on June 18, 2014, the IRS announced the expanded 2014

SFCP to accommodate a wider population of U.S. individuals living outside the country and, for

the first time, to qualifying U.S. individuals residing in the United States.  I.R.S. News Release

IR-2014-73 (June 18, 2014), *available at* https://www.irs.gov/pub/irs-news/IR-14-073.pdf.  "The

expanded streamlined procedures are intended for U.S. taxpayers whose failure to disclose their

offshore assets was non-willful."  *Id.*

37.     The 2014 SFCP eliminated the risk-assessment process associated with the 2012 SFCP

and the requirement that the applicant have $1,500 or less of unpaid tax per year.  Instead, U.S.

applicants seeking to participate in the 2014 SFCP were required merely to: (i) file amended or

delinquent U.S. income tax and related information returns for each of the most recent three tax

years; (ii) file amended or delinquent FBARs for each of the most recent six tax years; (iii) pay all unpaid tax and interest due for the applicable three tax years; and (iv) certify that that the failure to report all income, pay all tax, and submit all required information returns, including FBARs, was not willful.

38.     For eligible U.S. applicants residing in the United States, the 2014 SFCP miscellaneous "offshore penalty" is equal to five percent of the highest aggregate balance of foreign accounts and the highest value of offshore assets that are subject to the penalty.   For eligible U.S. applicants residing outside the United States, there is no penalty.

39.     An applicant who is eligible to use the 2014 SFCP and who complies with the requirements to enter the 2014 SFCP will not be subject to accuracy-related penalties, information return penalties, or FBAR penalties, unless the returns filed are subsequently selected for audit under existing audit selection processes and the examination results in a determination that the original return was fraudulent and/or that the FBAR violation was willful. Accordingly, in essence, the 2014 SFCP gave back to non-willful participants what the IRS had taken away when it refused to apply FAQ No. 35 as it was written, *i.e.*, a mechanism to ensure that such participants only pay a penalty under the program that is roughly calibrated to the one they actually owe under the law.

40.     The IRS may select tax returns submitted as part of the 2014 SFCP for audit.  The IRS may verify the information provided against information received from banks, financial advisors, and other sources.   Under the 2014 SFCP, as under our laws generally, individuals may be subject to additional civil penalties and criminal liability if they lie in their submissions or otherwise are properly subject to such penalties or liability.

**F.      The 2014 OVDP**

41.     On June 18, 2014, concurrent with the expansion of the 2014 SFCP, the IRS modified the

2012 OVDP and created a new iteration of the program (the "2014 OVDP").  The 2014 OVDP

required additional information from applicants applying to the program, increased the

miscellaneous "offshore penalty" percentage from 27.5 percent to 50 percent if it became public

that the IRS or the U.S. Department of Justice was investigating a financial institution at which

the applicant held an account or another party that was facilitating the applicant's offshore

arrangement, and required applicants to submit all account statements and prepay the offshore

penalty at the time of the 2014 OVDP application.

42.     The 2014 OVDP also eliminated the existing reduced miscellaneous offshore penalty

percentages of 5 percent and 12.5 percent for certain participating applicants because those

applicants, along with many others, were now covered by the 2014 SFCP.

**G.      The Transition Rules Under the 2014 OVDP**

43.     Following the expansion of the SFCP and modifications to the OVDP, the IRS also set

forth "rules" for applicants who want to move from the OVDP into the 2014 SFCP.  These

Transition Rules are set forth in the form of FAQs on the IRS website at:

http://www.irs.gov/Individuals/International-Taxpayers/Transition-Rules-Frequently-Asked-

Questions-FAQs (the "Transition Rules FAQs").

44.     The Transition Rules stipulate that certain applicants in the OVDP are provided "an

opportunity to remain in the OVDP while taking advantage of the favorable penalty structure of

the expanded streamlined procedures."  Transition Rules FAQs, at No. 1.

45.     The Transition Rules mandate that an applicant will be eligible for transitional treatment

only if the applicant was deemed to be currently participating in the OVDP.  An applicant was

deemed to be currently participating in the OVDP if:  (i) the applicant had entered an OVDP by

submitting a voluntary disclosure letter and the required attachments before July 1, 2014; and (ii) as of July 1, 2014, the applicant either (a) remained in the OVDP but had not completed the OVDP certification process, or (b) opted out of the OVDP but had not yet received a letter initiating examination and enclosing Notice 609.  Transition Rules FAQs, at Nos. 1-2.

46.     The Transition Rules deny transitional treatment to applicants who, as of July 1, 2014, had completed the OVDP certification process in which a Form 906 Closing Agreement was fully executed by the IRS.  Transition Rules FAQs, at No. 2.

47.     The Transition Rules deny eligibility for transitional treatment to applicants whose cases were removed from the OVDP by the IRS.  Transition Rules FAQs, at No. 4.

48.     The Transition Rules require any applicant who requests transitional treatment to: (i) submit all documents required under the iteration of the OVDP in which the applicant was participating; (ii) submit a written statement signed under penalty of perjury "certifying [her] non-willfulness with respect to all foreign activities/assets, specifically describing the reasons for the failure to report all income, pay all tax, and submit all required information returns, including FBARs, and, if the taxpayer relied on a professional advisor, including the name, address, and telephone number of the advisor and a summary of the advice"; and (iii) pay any tax, interest, and any accuracy-related, failure-to-file, and/or failure-to-pay penalties that would be due under OVDP.  Transition Rules FAQs, at No. 6.

49.     The Transition Rules stipulate that the IRS will consider the applicant's request in light of all the facts and circumstances of the applicant's case and will determine whether to incorporate the 2014 SFCP offshore penalty terms in the OVDP closing agreement. Transition Rules FAQs, at No. 7.

50.     The IRS originally stated that "a taxpayer who qualifies for the new [2014 SFCP] but who is already in the OVDP can withdraw from the OVDP and move to the [2014 SFCP]," but that the IRS "would appreciate receiving correspondence from the taxpayer that details his intentions to do so."   Jaime Arora, *Don't Hastily Join Streamlined Compliance Program, Keneally Says*, 74 Tax Notes Int'l 1206 (June 30, 2014) (quoting IRS official Jennifer Best). However, the Transition Rules compel IRS examiners to review whether the applicant's certification of non-willfulness is complete and whether the available information is consistent with the certification.  The IRS examiner must make an initial determination, and the examiner's manager and a technical advisor must concur with that determination.   A central review committee may also review the determination; the decision of that committee is final, but participants have no ability to present their cases to that committee.  Transition Rules FAQs, at No. 8.

51.     The Transition Rules do not provide any guidance on the criteria for whether an examiner's determination will be reviewed by the central review committee, what the specific standards of review are (whether by the examiner, the manager, technical advisor, or the committee), what factors are considered during the review, what factors are controlling, or any other similar guidance.

52.     The Transition Rules do not describe the burden of proof necessary to determine willfulness.

53.     The Transition Rules do not allow applicants to appeal the IRS's determination of whether the applicant qualifies for transitional treatment.  Transition Rules FAQs, at No. 8.

54.     The Transition Rules state that applicants are not required to pay the miscellaneous offshore penalty at the OVDP rate if they (i) qualify as currently participating in OVDP, (ii) meet

the eligibility requirements of the 2014 SFCP, (iii) provide the requested documents and certification, (iv) pay the requisite taxes and other penalties, and (v) receive approval from IRS. Instead of the miscellaneous offshore penalty prescribed under the applicable OVDP, such applicants must pay only the decreased 5 percent or no miscellaneous offshore penalty under the terms of the 2014 SFCP.  Transition Rules FAQs, at No. 5.

55.     The Transition Rules mandate that all other terms of the OVDP in which the applicant is entered will continue to apply, including: (i) the terms of the pertinent iteration of the OVDP, (ii) the requirement to execute a Form 906 Closing Agreement, and (iii) the requirement to pay all applicable accuracy-related, failure-to-file, and/or failure-to-pay penalties.  Transition Rules FAQs, at No. 9.

56.     The Transition Rules provide that an applicant's case remains governed by the terms of the OVDP in which the applicant is participating if the IRS determines that an applicant is not eligible for transitional treatment.  If the applicant finds the OVDP's offshore penalty to be unacceptable, the applicant's only recourse is to opt out of OVDP and have the case resolved in an examination process.  Transition Rules FAQs, at No. 8.  Moreover, according to the Transition Rules, if the IRS denies transition treatment, the participant is ineligible for the reduced penalty rates available to all of the other participants in the 2014 SFCP.

**The Transition Rules Are Not the Product of Notice-and-Comment Rulemaking**

57.     The IRS never published in the Federal Register any notice of proposed rulemaking with respect to the Transition Rules.

58.     The IRS never gave interested persons an opportunity to participate in the rulemaking with respect to the Transition Rules through submission of written data, views, or arguments.

59.     The Transition Rules did not satisfy any exception to the APA's notice-and-comment rulemaking requirements.

60.     The IRS published the Transition Rules solely through the Transition Rules FAQs on the IRS website.

61.     The Transition Rules are called "rules" by the IRS.

62.     The Transition Rules purport to have the force and effect of law.

63.     The IRS knew that interested parties had criticized the absence of more formal guidance with respect to the OVDP.  The Taxpayer Advocate Service, an independent office within the IRS, requested the IRS to improve the transparency of the OVDP and SFCP by publishing guidance that incorporated comments from the public, by formally disclosing and/or publishing interpretations of guidance, and by incorporating IRS personnel instructions into the Internal Revenue Manual.  National Taxpayer Advocate, Objectives Report to Congress, IRS Responses and National Taxpayer Advocate's Comments Regarding Most Serious Problems Identified in the 2014 Annual Report to Congress, Vol. 2, at 28 (2016) (describing Most Serious Problem # 7, "Offshore Voluntary Disclosure (OVD):  The OVD Programs Initially Undermined the Law and Still        Violate        Taxpayer        Rights"),        *available*        *at* http://www.taxpayeradvocate.irs.gov/Media/Default/Documents/2016-JRC/Volume_2.pdf.    The IRS did not do any of this.  Instead, it responded to these criticisms by stating that current guidance in the form of FAQs published on its website was "sufficiently transparent" and that a formal guidance process would not allow for the flexibility to make changes, corrections, and clarifications based on feedback from internal and external stakeholders to guidance as needed. *Id.* at 29 (IRS Response to the National Taxpayer Advocate).

64.     The IRS has not published any specific comments or feedback that it has considered in promulgating the guidance related to the OVDP, the SFCP, or the Transition Rules.

65.     The IRS changes, expands, or deletes the guidance in the form of FAQs on its website on its whim, without notice to the public, without public participation, and without any published or formal process.

66.     Since their inception in 2009, the IRS has administered the OVDP, the SFCP, the FAQs, and the Transition Rules through unpublished guidance promulgated without notice by clandestine committees that consider undisclosed commentary without any oversight whatsoever.

67.     IRS guidance, the agency's interpretation of its rules, and the agency's decisionmaking relating to the Transition Rules are shrouded in secrecy.  Despite public requests for formal guidance and publication of internal interpretations of the Transition Rules or of the IRS's decisionmaking process in determining willfulness, reasonable cause, qualification for the SFCP, and the amount of the offshore penalty, the IRS has refused to comply with fundamental notice-and-comment rulemaking requirements and has disenfranchised the public from participating in the rulemaking process.

68.     The Transition Rules do not satisfy the notice-and-comment rulemaking requirements of 5 U.S.C. § 553.

### The Transition Rules Are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law

69.     Applicants who directly enter the 2014 SFCP are required to file and pay tax and interest for amended or delinquent tax returns and related information returns for only the previous three years, but similarly situated applicants seeking to transition from the OVDP into the 2014 SFCP are required to file and pay tax and interest for amended or delinquent tax returns for the eight previous years.

70.     Applicants who directly enter the 2014 SFCP are not required to pay any accuracy-related penalties, or, if applicable, failure-to-file and failure-to-pay penalties that would be due under the OVDP Penalty Framework, but similarly situated applicants seeking to transition from the OVDP into the 2014 SFCP are required to pay these penalties.

71.     Applicants who directly enter the 2014 SFCP are able to participate by certifying non-willfulness.  The IRS then determines whether willfulness is present and selects applicants for audit pursuant to the normal IRS audit procedures where the IRS has the burden to prove willfulness.  In contrast, applicants who already participated in the OVDP (before July 1, 2014) and who are compelled to enter the 2014 SFCP through the Transition Rules have to affirmatively prove non-willfulness before being allowed to enter the 2014 SFCP.  The IRS does not publish, and IRS examiners do not adhere to, any uniform set of standards under which non-willfulness may be consistently and appropriately determined.

72.     The Transition Rules require applicants to prove their eligibility for the 2014 SFCP before being allowed to participate, but similarly situated applicants who directly enter the 2014 SFCP may participate unless the IRS subsequently makes a determination of willfulness.  In effect, the Transition Rules operate to block applicants from entering the 2014 SFCP in the first instance; similarly situated applicants do not face such an obstacle.

73.     Under the Transition Rules, an applicant does not have any opportunity to administratively appeal or otherwise dispute a determination that the applicant could not establish non-willfulness.  If an applicant disagrees, the only option is to opt out of the OVDP and likely face an IRS audit of the issues, higher penalties due to a different standard of review, and possible criminal prosecution.  Pursuant to the Transition Rules, an applicant currently in OVDP cannot opt out of the program and enter into the 2014 SFCP unless the applicant fully

complies with the Transition Rules.  If the applicant is removed or opts out of the OVDP, then

that applicant is deemed ineligible for the 2014 SFCP.  Transition Rules FAQs, at Nos. 2, 4.

74.     From March 1, 2011, when the IRS reversed its position with respect to FAQ No. 35 and

foreclosed the ability of IRS examiners to make determinations of non-willfulness, reasonable

cause, and decreased penalties under "existing statues," to June 18, 2014, when the IRS

announced the 2014 SFCP, the IRS did not provide an option within OVDP to determine non-

willfulness, reasonable cause, and decreased penalties under existing law.

75.     The Transition Rules prohibit applicants currently in the OVDP from obtaining a

determination of non-willfulness, reasonable cause, or decreased penalties under existing law

unless they satisfy additional burdens that are not applied to similarly situated applicants who

directly enter the 2014 SFCP.

76.     The IRS contends that applicants entering the 2014 SFCP via the Transition Rules are

treated differently than similarly situated applicants because the IRS must "concur on the non-

willful statement before agreeing to give the 5 percent penalty" under the 2014 SFCP.  Kristen

A. Parillo, *ABA Meeting: More Guidance Coming on Modified OVDP and Streamlined Filing*,

75 Tax Notes Int'l 1117 (Sept. 29, 2014) (summarizing statements of Jennifer Best, IRS Senior

Adviser to the Deputy Commissioner (International), IRS Large Business and International

Division).  But the IRS also determines whether applicants who directly enter the 2014 SFCP

have willfully violated FBAR requirements.  The need to determine non-willfulness is the same

in both programs and does not justify the additional filing burdens, a heightened standard of

review, and the additional tax, interest, and penalty payments required by the Transition Rules.

77.     The Transition Rules treat similarly situated applicants differently depending solely on

whether they came forward before July 1, 2014, or after June 30, 2014, with the applicants who

were more responsible and came forward earlier under the OVDP being treated worse under the Transition Rules than those who waited to disclose until the 2014 SFCP were promulgated.

78.    The Transition Rules are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) because the Transition Rules disadvantage applicants who voluntarily disclosed their offshore accounts before July 1, 2014, and treat them worse than similarly situated applicants who voluntarily disclosed their offshore accounts after June 30, 2014.

79.    The Transition Rules also are arbitrary and capricious because the IRS changed its position with respect to transitioning from the OVDP into the 2014 SFCP by imposing additional compliance, review standards, and monetary burdens.

## THE PLAINTIFFS' ATTEMPTS TO ENTER THE SFCP
### Plaintiff Eva Maze

80.    Eva Maze was born in 1922 in Bucharest, Romania.  She moved to the United States to escape Nazi occupation of Romania during World War II.  In 1948, after the end of World War II, Mrs. Maze returned to Europe, where she lived until 2012, when she returned to the United States.

81.    While living in Europe, Mrs. Maze transferred certain funds held in bank accounts in Switzerland that she had inherited from her husband when he passed away in 1992, and opened a bank account in France, where she resided.  She mistakenly believed these accounts were not reportable in the United States.

82.    Mrs. Maze took action at the time to rectify her non-willful mistake and comply with the law by applying to the 2012 OVDP.

83.     On September 17, 2014, Mrs. Maze's attorney notified the IRS of Mrs. Maze's intention to withdraw from the 2012 OVDP and to enter the 2014 SFCP.  This notice was repeated on June 8, 2015.

84.     On June 10, 2015, the IRS agent handling Mrs. Maze's case informed Mrs. Maze's attorney that, if Mrs. Maze withdrew from the 2012 OVDP, her application to the 2014 SFCP would be denied and she would be subject to a full examination.  The agent also informed Mrs. Maze and her attorney that she could request transitional treatment pursuant only to the Transition Rules.

85.     On September 29, 2015, Mrs. Maze's attorney told the agent that he intended to seek judicial review of the matter and to refrain from taking any action that could cause further harm to Mrs. Maze—including removal from the 2012 OVDP.

86.     On October 5, 2015, Mrs. Maze's agent informed Mrs. Maze and her attorney that she would be removed from the 2012 OVDP and audited.

87.     If Mrs. Maze had not submitted a voluntary disclosure under the 2012 OVDP, she would have qualified to apply  for the 2014 SFCP.

**Plaintiff Suzanne Batra**

88.     Mrs. Batra was born in New York in 1937.  She married Lekh Raj Batra, who was born and raised in India, in 1960.  After the 1985 Savings and Loan Crisis in the United States, Mrs. Batra and her husband decided to deposit the funds in foreign bank accounts because of the continued instability of the U.S. banking system and the financial security offered in foreign jurisdictions.  Mrs. Batra assumed these accounts were not reportable in the United States.

89.     Mrs. Batra first learned of the requirements to report her foreign bank accounts in March 2010, when her bankers informed her of the obligation.  She immediately hired legal professionals to assist her in complying with pertinent U.S. filing requirements.

90.     Because the formal 2009 OVDP had lapsed at the time she initially sought to disclose her accounts, Mrs. Batra submitted a voluntary disclosure pursuant to the historical IRS practice in July 2010.  In August 2010, Mrs. Batra received confirmation that her voluntary disclosure had been preliminarily accepted.  In April 2011, the IRS sent to Mrs. Batra a letter stating that her case would be processed pursuant to the then-newly promulgated 2011 OVDP.

91.     As of July 14, 2015, Mrs. Batra had submitted to the IRS the documents necessary to qualify for SFCP treatment under the Transition Rules.

92.     In a letter dated July 31, 2015, the IRS denied Mrs. Batra's request to transition to the SFCP pursuant to the Transition Rules.

93.     During a telephone conversation on August 21, 2015, the IRS agent assigned to her case informed Mrs. Batra's representative that Mrs. Batra had no willful intent to evade taxes or avoid FBAR reporting requirements, but the agent could not necessarily agree that Mrs. Batra had non-willful intent.

94.     If Mrs. Batra had not submitted a voluntary disclosure under the 2011 OVDP, she would have qualified to apply for the 2014 SFCP.

**Plaintiff Margot Lichtenstein**

95.     Mrs. Lichtenstein was born in Berlin, Germany in 1924.  She came to the United States in 1951 with her husband, Boruch Lichtenstein, whom she had just married.  Mr. Lichtenstein was Jewish.  He was born in Poland, escaped to Russia during the Polish anti-Jewish pogroms, and left Russia around 1951.

96.     After Mrs. Lichtenstein's husband passed away in 1997, Mrs. Lichtenstein inherited certain foreign bank accounts from her husband, which she mistakenly believed were not reportable in the United States.

97.     Mrs. Lichtenstein first learned of the requirement to file FBARs with respect to her foreign bank accounts in June 2012, and immediately took action to rectify her non-willful mistake and comply with the law by applying to the 2012 OVDP.

98.     On June 2, 2015, Mrs. Lichtenstein, through her attorney, requested to withdraw from the 2012 OVDP and to enter the 2014 SFCP.

99.     In response, the IRS agent assigned to Mrs. Lichtenstein's case sent Mrs. Lichtenstein and her attorney a letter dated June 5, 2012.  That letter directed Mrs. Lichtenstein to "[p]lease refer to Transition Rules FAQ #6 for the steps which you must take in order to seek transitional treatment."  The referenced portion of the Transition Rules was highlighted in yellow in an attachment to the letter.  The letter also stated that "[t]he taxpayer's transition statement will not be considered until all OVDP submission documents have been provided."

100.    If Mrs. Lichtenstein had not submitted a voluntary disclosure under the 2012 OVDP, she would have qualified to apply for the 2014 SFCP.

## INJURY TO PLAINTIFFS

101.   The IRS arbitrarily and capriciously prohibited Plaintiffs from withdrawing from the 2012 OVDP and entering into the 2014 SFCP through any procedures other than the Transition Rules, which are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and which are not the product of notice-and-comment rulemaking.

102.   The IRS treated Plaintiffs worse than it treated other similarly situated applicants solely because the Plaintiffs filed their voluntary disclosures and entered the 2012 OVDP before these other similarly situated applicants.

103.   The IRS blocked the Plaintiffs from withdrawing from the 2012 OVDP and entering the 2014 SFCP through any route other than the Transition Rules.

104.   The IRS's decisions to deny the Plaintiffs entry into the 2014 SFCP through any route other than the Transition Rules and the IRS's failure to provide a direct method of entry into the 2014 SFCP imposed upon the Plaintiffs a greater offshore penalty, exposure to additional civil penalties, increased filing burdens, a disparate standard of review, and a longer case-review time (and thus attorneys' fees) as compared to other similarly situated applicants.

## CAUSE OF ACTION

105.   All preceding allegations are incorporated here as if set forth in full.

106.   The actions of the Defendants in promulgating the Transition Rules were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

107.   The actions of the Defendants in promulgating the Transition Rules were contrary to the notice-and-comment rulemaking requirements of 5 U.S.C. § 553 and without observance of procedure required by law under 5 U.S.C. § 706(2)(D).

108.    The Transition Rules purport to have, and are treated as having, the force and effect of law, but are not the product of notice-and-comment rulemaking, are arbitrary and capricious, and are therefore invalid.

109.    Plaintiffs have no adequate or available administrative remedy.  In the alternative, any effort to obtain an administrative remedy would be futile.

110.    Plaintiffs have no adequate remedy at law.

111.    The action of the Defendants in promulgating and enforcing the Transition Rules imposed a harm on Plaintiffs that warrants relief.

**REQUEST FOR RELIEF**

Therefore, Plaintiffs respectfully request the following relief:

A.    A holding by the Court setting aside the Transition Rules as unlawful under 5 U.S.C. § 706(2);

B.    A judgment by the Court that, under 5 U.S.C. § 706(2)(A), the Transition Rules are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and are therefore invalid;

C.    A judgment by the Court that the Transition Rules did not comply with the notice-and-comment rulemaking requirements of 5 U.S.C. § 553, were without observance of procedure required by law under 5 U.S.C. §706(2)(D), and are therefore invalid;

D.    A judgment that Plaintiffs may withdraw from the 2012 OVDP and directly enter the 2014 SFCP where the IRS must treat them the same as any other 2014 SFCP applicants;

E.    An injunction prohibiting Defendants or their agents from enforcing the Transition Rules;

F.    An award of attorneys' fees, costs, and expenses in this action; and

G.     Any other legal or equitable relief to which the Plaintiffs may show themselves to be justly entitled.

Dated: October 26, 2015                          Respectfully Submitted


/s/ George M. Clarke III

George M. Clarke III (D.C. Bar No. 480073)
Joseph B. Judkins (D.C. Bar No. 499737)
(Admission Pending)
Baker & McKenzie LLP
815 Connecticut Ave. NW
Washington, DC 20006
Tel: (202) 452-7000

Milan K. Patel (Admitted in New York and
New Jersey and appearing pursuant to LCvR
83.2(c))
Anaford AG
Toedistrasse 53
8002 Zurich, Switzerland

Marnin J. Michaels (Admitted in New York
and appearing pursuant to LCvR 83.2(c))
Baker & McKenzie LLP
Holbeinstrasse 30
8034 Zurich, Switzerland