# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EVA MAZE, *et al.*, <br>        Plaintiffs <br><br>        v. <br><br> INTERNAL REVENUE SERVICE, *et al.*, <br>        Defendants | Civil Action No. 15-1806 (CKK) |
| MARIE M. GREEN, *et al.*, <br>        Plaintiff <br><br>        v. <br><br> INTERNAL REVENUE SERVICE, *et al.*, <br>        Defendants | Civil Action No. 16-1085 (CKK) |

## MEMORANDUM OPINION
(July 25, 2016)

Plaintiffs are individuals who failed to report offshore income in foreign accounts, to file required documentation regarding these funds, and to pay the requisite amount of taxes associated with those funds. After they were made to see the error of their ways, each began to participate in a voluntary program of the Internal Revenue Service ("IRS") to begin to unwind these errors. The program in which they began to participate is now one among a family of such programs designed to encourage delinquent taxpayers to correct their previous errors. Each of these programs encourages participation by providing benefits to would-be taxpayers, as well as replenishing the public fisc. Plaintiffs now seek injunctive and declaratory relief against the IRS and associated defendants in connection with these programs, including a declaration that certain rules regarding transitions between two of these programs are unlawful; an injunction against the enforcement of those rules; and a judgment that Plaintiffs can withdraw from one program and enter another, contrary to the existing rules governing those programs.

Before the Court is Defendants' [9] Motion to Dismiss filed in the case captioned *Maze v. Internal Revenue Service* (15-cv-1806).[1] Defendants first argue that this Court is deprived of subject matter jurisdiction over this case as a result of the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act. They next argue that the United States has not waived its sovereign immunity over the claims in this case because the claims pertain to enforcement decisions that are committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2) (Administrative Procedure Act inapplicable when "(2) agency action is committed to agency discretion by law"). Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' [9] Motion to Dismiss. As explained further below, the Court concludes that it has no jurisdiction over this action in light of the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act. Therefore, the Court does not reach Defendants' argument that this case must be dismissed because enforcement activities are committed to the agency's discretion by law. This case is dismissed in its entirety for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

---

[1] The Court granted the parties' joint motion to consolidate Case No. 15-cv-1806 (*Maze v. Internal Revenue Service*) and Case No. 16-cv-1085 (*Green v. Internal Revenue Service*). Pursuant to the parties' stipulation and the Court's order granting the motion to consolidate, the resolution of the motion to dismiss filed in *Maze* will bind all parties to this consolidated action. For the remainder of this Memorandum Opinion, however, the Court only refers to the parties in *Maze* and to the briefing that they filed for the sake of clarity.

[2] The Court's consideration has focused on the following documents:

- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 9;
- Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 13; and
- Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply"), ECF No. 14    .

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## I. BACKGROUND

The Court limits its presentation of the background to the key facts that are necessary for the Court's resolution of the fundamental issue presented in the pending motion: whether the Court is deprived of jurisdiction over this action in light of the jurisdiction-stripping provision of the Anti-Injunction Act and in light of the tax exception to the Declaratory Judgment Act.

### A.  Statutory and Regulatory Context

The United States tax system has a broad reach. Notably, "[t]he United States income tax system reaches all U.S. citizens' income no matter where in the world it is earned, 'unless it is expressly excepted by another provision in the Tax Code.' " *Rogers v. Comm'r of I.R.S.*, 783 F.3d 320, 322 (D.C. Cir.), *cert. denied* 136 S. Ct. 369 (2015) (citations omitted). In order to implement this system, as the Supreme Court has noted, "our tax structure is based on a system of self-reporting." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975); *see also Florida Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1073 (D.C. Cir. 2015) (Henderson, J., dissenting), *cert. denied* 136 S. Ct. 2429 (2016). Those reporting requirements are both detailed and complex, and they extend to certain foreign assets, accounts, and income. *See, e.g.*, 26 U.S.C. § 6048(c) (reporting required by United States beneficiaries of foreign trusts). As the Supreme Court has further noted, "basically the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *Bisceglia*, 420 U.S. at 145. In addition to depending on the honesty of each taxpayer, the system includes an array of civil and criminal penalties, including, but not limited to, accuracy-related penalties for the underpayment of taxes and penalties for failing to file certain required documentation. *See, e.g.*, 26 U.S.C. §§ 6046, 6046A, 6048, 6677, 6679 (failure to file penalties); *id.* § 6662 (accuracy-related penalties). This scheme includes criminal penalties for willful

failures to comply with tax obligations. *See, e.g., id.* § 7201 ("Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 … , or imprisoned not more than 5 years, or both, together with the costs of prosecution."); *id.* § 7206 (criminal penalties for willful false statements in tax materials submitted).

The IRS engages in affirmative investigations of taxpayers suspected of non-compliance. However, in light of the limited resources available for such investigations, the IRS uses a variety of voluntary disclosure programs to encourage non-compliant taxpayers to come into compliance with the applicable law. Common to all such programs is that the IRS provides certain benefits for taxpayers in exchange for voluntary disclosure pursuant to the applicable guidelines. Providing some *benefit* for voluntary disclosure—even belated—encourages voluntary participation in those programs.[3] It is several such programs, all with respect to foreign assets, accounts, and income, that are central to this case.

Two basic types of programs are at issue in this case: Offshore Voluntary Disclosure Programs ("OVDPs") and Streamlined Filing Compliance Procedures ("SFCP or "Streamlined

_____

[3] Taxpayers who are undergoing a civil examination or a criminal investigation are not eligible for participation in such programs. *See, e.g.*, Streamlined Filing Compliance Procedures, https://www.irs.gov/Individuals/International-Taxpayers/Streamlined-Filing-Compliance-Procedures (last visited July 18, 2016); Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014, https://www.irs.gov/individuals/international-taxpayers/offshore-voluntary-disclosure-program-frequently-asked-questions-and-answers-2012-revised (last visited July 18, 2016).

Procedures"). To participate in the 2012 OVDP,[4] which Plaintiffs entered, a taxpayer are required to comply with the following requirements, among others:

- file *eight* years of tax returns and Reports of Foreign Bank and Financial Accounts ("FBARs");

- pay tax and interest for *eight* years; and

- pay accuracy-related penalties for *eight* years.

Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014 ("Revised 2012 OVDP FAQs"), https://www.irs.gov/individuals/international-taxpayers/offshore-voluntary-disclosure-program-frequently-asked-questions-and-answers-2012-revised (last visited July 18, 2016).[5]

In return for full compliance with the applicable requirements, the IRS offers participants the following three primary benefits. *First*, with the exception of the accuracy-related penalties under section 6662(a) of the Internal Revenue Code, a compromise of all penalties for which a taxpayer may be liable by paying 27.5% of the aggregate value of the taxpayer's foreign assets. *Id.* This compromise encompasses "FBAR and offshore-related information return penalties and tax liabilities for years prior to the voluntary disclosure period." *Id.* The compromise penalty, which consists of 27.5% of the value of a taxpayer's foreign assets, is referred to as the miscellaneous Title 26 offshore penalty. *Id. Second*, the IRS will not recommend to the

---

[4] Those provisions were revised when the IRS announced the 2014 Streamlined Procedures. When discussing the 2012 OVDP, the Court refers to the OVDP as revised, given that the revised program is now at issue.

[5] Defendants note that taxpayers under the 2012 OVDP must pay any applicable failure-to-file penalties under section 6651(a)(1) and failure-to-pay penalties under 6651(a)(2)-(3) for eight years. Defs.' Mot. at 8 n.3; *see also* Revised 2012 OVDP FAQs, FAQ No. 7. But Defendants also note that it is unlikely that such penalties would be applicable to Plaintiffs. Defs.' Mot. at 8 n.3. Accordingly, like Defendants, the Court does not discuss those penalties further.

Department of Justice criminal prosecution for any matter relating to tax noncompliance or failure to file a Report of Foreign Bank and Financial Accounts.[6] *Id.* As explained by the IRS, participation in an OVDP "generally eliminate[s] the risk of criminal prosecution for all issues relating to tax noncompliance and failing to file FBARs" for past tax years. AR 170, FAQ No. 4. *Third*, the IRS and the taxpayer sign a closing agreement, which constitutes a final settlement of all matters relating to the disclosure period and to years prior to the disclosure period. *Id.* Altogether these actions bar the IRS from taking action based on any tax delinquency in the years before the eight-year disclosure period.

In 2014, the IRS introduced the 2014 Streamlined Procedures. The IRS explained that "[t]he expanded streamlined procedures are intended for U.S. taxpayers whose failure to disclose their offshore assets was non-willful." AR 146. To participate in the 2014 Streamlined Procedures, a taxpayer is required to comply with the following requirements, among others:

- file *three* years of tax returns and *six* years of FBARs;

- pay tax and interest for *three* years; and

- pay a miscellaneous Title 26 offshore penalty equivalent to 5% of the value of the taxpayer's foreign assets.

Streamlined Filing Compliance Procedures, https://www.irs.gov/individuals/international-taxpayers/u-s-taxpayers-residing-in-the-united-states

(last visited July 18, 2016) ("2014 Streamlined Procedures (U.S.)"). A compromise miscellaneous offshore penalty payment is not required for non-U.S. residents. *See* U.S.

---

[6] Defendants state that, upon the completion of the requirements of the program, a taxpayer will receive a non-prosecution letter from the IRS, which they describe as essentially assurance from the Commission of the Internal Revenue that the IRS will not refer the matter to the Department of Justice for prosecution. Defs.' Mot. at 7. But Defendants do not point to any material in the record or any legal authority that shows that such letters are automatically issued. In any event, this distinction is immaterial to the resolution of this case.

Taxpayers Residing Outside the United States, https://www.irs.gov/individuals/international-taxpayers/u-s-taxpayers-residing-outside-the-united-states (last visited July 18, 2016) ("2014 Streamlined Procedures (Outside)"). In return, these filings and payments serve as a compromise for all penalties not involving willfulness for the three years covered by the program. *See id.*; 2014 Streamlined Procedures (U.S.). However, the IRS can pursue the taxpayer for fraud-related penalties for all years and for willful FBAR penalties for all years, as well as other penalties from the years *prior* to the three years subject to this program. *See id.* The Streamlined Procedures do not involve any assurance regarding a decision not to refer the matter for criminal prosecution—as the OVDP does—nor do they involve a final settlement agreement resolving tax issues pertaining to prior years. *See id.*

The relationship between these two programs is at the core of this case. A "taxpayer who submits an OVDP voluntary disclosure letter pursuant to OVDP FAQ 24 on or after July 1, 2014, is not eligible to participate in the streamlined procedures." AR 151; *see also* Streamlined Filing Compliance Procedures, https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures (last visited July 18, 2016) ("Streamlined Procedures Overview"). "A taxpayer eligible for treatment under the streamlined procedures who submits, or has submitted, a voluntary disclosure letter under the OVDP (or any predecessor offshore voluntary disclosure program) prior to July 1, 2014, but who does not yet have a fully executed OVDP closing agreement, may request treatment under the *applicable penalty terms* available under the streamlined procedures." AR 151 (emphasis added). "A taxpayer seeking such treatment does not need to opt out of OVDP, but will be required to certify, in accordance with the instructions set forth below, that the failure to report all income, pay all tax, and submit all required information returns, including FBARs, was due to non-willful conduct." AR 151-52. Finally, the IRS would

consider a request for such treatment "in light of all the facts and circumstances of the taxpayer's case and will determine whether or not to incorporate the streamlined penalty terms in the OVDP closing agreement." AR 152.

In short, a taxpayer that enters an OVDP after July 1, 2014—shortly after the 2014 Streamlined Procedures were introduced—is categorically barred from the Streamlined Procedures. A taxpayer that had *already* entered an OVDP before that deadline, such as Plaintiffs in this case, *may* be able to receive the favorable penalty terms of the Streamlined Procedures, but must remain in the OVDP in order to do so. The Court will refer to this option, as do Defendants, as the "Transition Treatment." An applicant is not automatically afforded the benefits of Transition Treatment. *See* Transition Rules: Frequently Asked Questions (FAQs), https://www.irs.gov/individuals/international-taxpayers/transition-rules-frequently-asked-questions-faqs (last visited on July 18, 2016) ("Transition FAQs"). Among other requirements for qualifying for this treatment, the IRS "must agree that the available information is consistent with the taxpayer's certification of non-willful conduct." *Id.* A taxpayer afforded the Transition Treatment will only be required to pay the miscellaneous Title 26 offshore penalty required under the Streamlined Procedures rather than the penalty required under the OVDP. *Id.* That is, for a domestic taxpayer, only a 5% penalty will be required as opposed to the 27.5% penalty mandated under the 2012 OVDP, as explained above. There is no alternative path for a taxpayer participating in an OVDP to leave such a program and enter the Streamlined Procedures on the terms applicable to new participants in that program.

Lastly, the treatment of participants in these several programs differs with respect to the availability of criminal non-prosecution letters. As noted above, under the OVDP, participants can receive a criminal non-prosecution letter, which provides assurance that the IRS will not

refer related tax matters to the Department of Justice for criminal prosecution. Def.'s Mot. at 7. This benefit is not available under the 2014 Streamlined Procedures. *See generally* 2014 Streamlined Procedures (U.S.). By contrast, the benefit of non-prosecution letters remains available under the Transition Treatment because the participants never exit the OVDP itself; instead, they remain bound by the rules of that program, except that they are eligible to receive beneficial treatment regarding certain penalties, as detailed above. *See generally* Transition FAQs.

**B. Plaintiffs' Claims and Relief Sought**

Each plaintiff's claims emerges from a similar factual background: after a number of years of failing to report funds held in foreign bank accounts, each plaintiff entered the IRS's 2011 or 2012 Offshore Voluntary Disclosure Program.[7] Compl. ¶¶ 82 (Eva Maze); 90 (Suzanne Batra); 97 (Margot Lichtenstein). Each subsequently sought to "directly enter" the 2014 Streamlined Procedures, and each was told that doing so was not possible. *Id.* ¶¶ 83-84 (Maze); 91-92 (Batra); 98-99 (Lichtenstein). Having received this response, they joined together to bring this action. The parties have not suggested any material differences among the experiences of the several plaintiffs.

---

[7] As Defendants have noted, Plaintiffs include contradictory allegations about whether Plaintiff Batra entered the 2011 Program or the 2012 Program. *Compare* Compl. ¶ 1 (all plaintiffs participated in the 2012 program) *with id.* ¶ 90 (describing participation of Batra in 2011 program). It appears that all references to Batra individually refer to participation in the 2011 Program. *See id.* ¶ 90; Pls.' Opp'n at 4 (citing Decl. of William Sweeney at ¶ 7, Ex. A); *id.* at 5-6. It may be that Plaintiffs' references to all of them participating in the 2012 program and seeking to exit *that* program are simplifications or misstatements. *See, e.g.*, Compl. ¶¶ 101-103, Request for Relief ¶ D. In any event, these discrepancies are immaterial for the purposes for the pending motion because the programs are substantially similar. See Defs.' Mot. at 13 n.5. The one difference that the parties all note is that the 2011 OVDP required a payment of 25% of foreign assets, while the 2012 OVDP required a payment of 27.5% of foreign assets. *See id.*; Pls.' Mot. at 13. But that difference has no effect on the result in this case.

Based on these underlying allegations, Plaintiffs further allege that the "IRS blocked the Plaintiffs from withdrawing from the 2012 OVDP and entering the 2014 SFCP through any route other than the Transition Rules." *Id.* ¶ 103. Plaintiffs then claim that they were harmed by the IRS's "decision to deny Plaintiffs entry into the 2014 [Streamlined Procedures] through any route other than the Transition Rules." *Id.* ¶ 104. Plaintiffs further claim that "the IRS's failure to provide a direct method of entry into the 2014 SFCP imposed upon the Plaintiffs a greater offshore penalty, exposure to additional civil penalties, increased filing burdens, a disparate standard of review, and a longer case-review time (and thus attorneys' fees) as compared to other similarly situated applicants." *Id.*

On the basis of this claim of injury, Plaintiffs claim that Defendants actions violated two provisions of the Administrative Procedure Act. First, they claim that "Defendants actions in promulgating the Transition Rules were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* ¶ 106 (citing 5 U.S.C. § 706(2)(A)). Second, they claim that the "Transition Rules" were procedurally defective because they "were contrary to the notice-and-comment rulemaking requirements" of the Administrative Procedure Act and were "without observance of procedure required by law." *Id.* ¶ 107 (citing 5 U.S.C. §§ 553, 706(2)(D)).

The Court presents *in full* the relief requested by Plaintiffs through the Complaint, as it pertains directly to the legal question before the Court. Plaintiffs request:

> A. A holding by the Court setting aside the Transition Rules as unlawful under 5 U.S.C. § 706(2);
>
> B. A judgment by the Court that, under 5 U.S.C. § 706(2)(A), the Transition Rules are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and are therefore invalid;
>
> C. A judgment by the Court that the Transition Rules did not comply with the notice-and-comment rulemaking requirements of 5 U.S.C. § 553, were without observance of procedure required by law under 5 U.S.C. §706(2)(D), and are therefore invalid;

D. A judgment that Plaintiffs may withdraw from the 2012 OVDP [Offshore Voluntary Disclosure Program] and directly enter the 2014 SFCP [Streamlined Procedures] where the IRS must treat them the same as any other 2014 SFCP applicants;

E. An injunction prohibiting Defendants or their agents from enforcing the Transition Rules;

F. An award of attorneys' fees, costs, and expenses in this action; and

G. Any other legal or equitable relief to which the Plaintiffs may show themselves to be justly entitled.

Compl., Request for Relief. To summarize, Plaintiffs request (1) judgments that the "Transition Rules" were unlawful under the Administrative Procedure Act, (2) an injunction allowing Plaintiffs to transfer from one IRS voluntary program to another, contrary to the IRS's existing rules prohibiting such a transfer; and (3) an injunction prohibiting the enforcement of the "Transition Rules." Moreover, it appears that Plaintiffs seek to retain benefits that are available only under the OVDP, specifically assurances from the IRS regarding the referral of matters for criminal prosecution for past tax years. *Compare* Defs.' Mot. at 13 (noting receipt of non-prosecution letters by Plaintiffs) *and* Defs.' Reply at 3 (detailing benefits of non-prosecution letters) *with* Pls.' Opp'n at 20, 31 (failing to relinquish of benefits of non-prosecution letter). Finally, Plaintiffs never claim that they have paid all of the taxes and penalties they owe with respect to *all eight* tax years relevant to the voluntary programs considered in this case; they only claim that they have now paid taxes for the three years covered by the Streamlined Procedures.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id.* To survive a motion to dismiss pursuant to Rule

12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

### III. DISCUSSION

Defendants argue that this Court has no jurisdiction over the claims in this case because of the jurisdiction-stripping provision of the Anti-Injunction Act and because of the analogous tax exception to the Declaratory Judgment Act. As explained below, the Court agrees with Defendants that this Court is deprived of jurisdiction over this action in its entirety by those statutes. Therefore, the Court does not reach Defendants' alternative argument that Plaintiffs may not bring these claims under the Administrative Procedure Act because the underlying enforcement regime is a matter committed to the IRS's discretion as a matter of law.

Under the Anti-Injunction Act, except as explicitly provided by the statute, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court

by any person."[8] 26 U.S.C. § 7421(a). "The Declaratory Judgment Act likewise prohibits most declaratory suits 'with respect to Federal taxes.' " *Florida Bankers Ass'n v. U.S. Dep't of Treasury*, 799 F.3d 1065, 1067 (D.C. Cir. 2015) *cert. denied* 136 S. Ct. 2429 (2016) (quoting 28 U.S.C. § 2201(a)). Two acts are "coterminous." *Id.* (citing *Cohen v. United States*, 650 F.3d 717, 730-31 (D.C. Cir. 2011) (en banc)). Practically that means that the scope of the Anti-Injunction Act governs the outcome of this case, and there is no need to refer to the tax exception under the Declaratory Judgment Act further. *See id.* at 1068 ("For simplicity, we will refer only to the Anti–Injunction Act."); *Cohen*, 650 F.3d at 730-31 ("In this light, the case is greatly simplified. The DJA [Declaratory Judgment Act] falls out of the picture because the scope of relief available under the DJA is subsumed by the broader injunctive relief available under the AIA [Anti-Injunction Act].").

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). "As the Supreme Court explained, the provision reflected 'appropriate concern about the ... danger that a multitude of spurious suits, or even suits with possible merit, would so interrupt the free flow of revenues as to jeopardize the Nation's fiscal stability.' " *Cohen v. United States*, 650 F.3d at 724 (quoting *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 769 (1974) (Blackmun, J., dissenting)). While the Anti-Injunction Act does not bar all legal claims pertaining to taxation, it does bar "those suits seeking to restrain the assessment or collection of taxes." *Id.* (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974)). Applying

---

[8] Plaintiffs do not claim that this action falls under one of the statutorily enumerated exceptions to the jurisdiction-stripping provision.

the Act "requires a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Id.* at 727; *see also Z Street v. Koskinen*, 791 F.3d 24, 30 (D.C. Cir. 2015) (same). Upon careful consideration of the remedies sought by Plaintiffs, the basis for those remedies, and the implications for the assessment and collection of *unpaid* taxes, the Court concludes that it has no jurisdiction over this case and dismisses it accordingly.

Defendants present three ways in which this suit seeks to restrain the assessment and collection of *unpaid* taxes. *First*, Defendants argue that, if Plaintiffs were permitted to directly participate in the 2014 Streamlined Procedures, as they request, it would directly interfere with the ability of the IRS to assess and collect accuracy-related penalties and failure-to-file penalties, which are treated as taxes under the Anti-Injunction Act. *Second*, Defendants argue that, if Plaintiffs were permitted to directly participate in the 2014 Streamlined Procedures, it would result in the IRS being forced to compromise Plaintiffs' outstanding tax liability without receiving eight years of tax returns and payments—as required under the 2011 and 2012 OVDPs. *Third*, Defendants argue that, under the relief requested by Plaintiffs, if the IRS chose to investigate whether Plaintiffs actually qualified for the 2014 Streamlined Procedures, the IRS would be required to prove fraud before assessing additional taxes and penalties. Defendants also emphasize that Plaintiffs seek to retain the benefit of the non-prosecution letters that are issued under the OVDP, while also enjoying the benefits of the 2014 Streamlined Procedures. In addition to presenting these three pathways through which the requested relief would restrain the assessment and collection of unpaid taxes, Defendants argue that Plaintiffs have not suffered a harm for which no alternative remedy exists and that, therefore, the attendant exception to the Anti-Injunction Act's jurisdictional bar is inapplicable.

With respect to each of these purported effects on tax assessment and collection, Plaintiffs respond that none of them constitutes a restraint on the IRS's ability to assess or collect taxes. Plaintiffs present several additional arguments in response. First, they argue that, because they claim they have paid the three-years of taxes required under the streamlined procedures, there is nothing to "assess or collect." (They do not argue that they have paid taxes for the five earlier years encompassed by the OVDPs.) Second, they characterize the "Transition Rules" as a procedural rule and argue that the Anti-Injunction Act does not bar a challenge to such a procedural rule. Third, Plaintiffs argue that the requested relief would not restrain the assessment or collection of taxes because it would not bar the IRS from seeking tax payments for certain years that would not be covered by the 2014 Streamlined Procedures, including the five earlier years that are covered by the OVDPs. Finally, Plaintiffs argue that Anti-Injunction Act is inapplicable because Plaintiffs have no adequate alternative remedy to the current litigation.

The Court first considers whether this action seeks to restrain the assessment or collection of unpaid taxes in the first instance. The Court agrees with Defendants that it does. Then, the Court turns to the question of whether Plaintiffs lack an alternative remedy such that this case falls into that exception to the Anti-Injunction Act's jurisdictional bar. The Court once again agrees with Defendants that adequate alternative remedies are available. Therefore, the Court is deprived of jurisdiction over this action.

## A.  Restraint of Collection or Assessment of Unpaid Taxes

As noted above, Defendants argue that three facets of the relief sought by Plaintiffs constitute a restraint on the assessment or collection of unpaid taxes. The Court evaluates each of those facets, together with Plaintiffs' arguments that none of these facets constitutes a restraint

on the assessment or collection of taxes. The Court then turns to Plaintiffs' additional arguments as to why this case does not entail the restraint of the assessment or collection of taxes.

### 1. Penalties Treated as Taxes

Certain penalties are treated as taxes for the purposes of the Anti-Injunction Act and of the Declaratory Judgment Act. *Florida Bankers Ass'n*, 799 F.3d at 1067 ("Because of its location in the U.S. Code, that penalty is treated as a tax for purposes of the Anti–Injunction Act."). Defendants argue that this case seeks to restrain the assessment and collection of taxes— specifically taxes that are owed but as of yet unpaid—because the relief it seeks would directly restrain the IRS's ability to collect certain penalties that are treated as taxes. The Court addresses the impact of the requested relief on various types of penalties in turn.

Under section 6662(a), an accuracy-related penalty of 20% is applicable to any "underpayment of tax required to be shown on a return." 26 U.S.C. § 6662(a). A provision in Chapter 68 of the Internal Revenue Code provides that the penalties in that chapter, which include the accuracy-related penalties, are considered taxes: "Any reference in this title to 'tax' imposed by this title [that is, the Internal Revenue Code] shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter." *Id.* § 6665(a)(2). In *Florida Bankers Association*, the D.C. Circuit concluded that identical language in Chapter 68, Subchapter B, results in penalties in *that* subchapter being considered taxes under the Anti-Injunction Act. *See Florida Bankers Ass'n*, 799 F.3d at 1068. Because there is no basis to distinguish between the language analyzed by the D.C. Circuit in *Florida Bankers Association* and the language in section 6665(a)(2), it is necessarily true that the accuracy-related penalties in Chapter 68 are similarly considered taxes for the purposes of the Anti-Injunction Act.

16

As explained above, participants in the 2012 OVDP must pay eight years of accuracy-related penalties (insofar as they are applicable to individual tax returns). The miscellaneous Title 26 offshore penalty *does not* serve as a compromise for these accuracy-related penalties. These requirements remain applicable to OVDP participants who receive the benefit of the Transition Treatment. *See* Transition FAQs, FAQ No. 9. By contrast, participants in the Streamlined Procedures are not required to pay accuracy-related penalties; instead, the 5% miscellaneous Title 26 offshore penalty serves as a compromise for all non-willful penalties for the three years in question, including the accuracy-related penalties. As a result, Plaintiffs' requested relief would bar the IRS from collecting accuracy-related penalties for the three years covered by the Streamlined Procedures. Because the accuracy-related penalties are considered taxes, the inability of the IRS to collect these penalties constitutes a restraint on the assessment and collection of unpaid taxes and penalties. Moreover, with respect to the five years covered by the OVDP but not covered by the Streamlined Procedures, the requested relief would substantially increase the difficulty in collecting the unpaid taxes and penalties. Specifically, while the IRS would not be barred from collecting accuracy-related penalties, it would not benefit from the automatic submission of tax returns required under the OVDP. The Court concludes that the substantial increase in the difficulty in the collection of those penalties constitutes a restraint on the assessment and collection of unpaid taxes, as well. That is, for both of these reasons, the requested relief constitutes a restraint on the assessment and collection of unpaid taxes.

In addition to the impact of the requested relief on the assessment and collection of accuracy-related penalties, Defendants identify other penalties that would be affected by the requested relief. As described above, participants in the 2012 OVDP are required to pay 27.5% of foreign assets as a compromise for all penalties other than accuracy-related penalties that may

be owed by the taxpayers. These penalties include failure-to-file penalties under section 6677 in

the following circumstances: for failure to file a return reporting a transaction *with* a foreign

trust, *see* 26 U.S.C. § 6048(a); for failure to file a return to report *ownership in* a foreign trust,

*see id.* § 6048(b); for failure to file a return for a foreign corporation, *see id.* § 6046; and for

failure to file a return for a foreign partnership, *see id.* § 6046A. As explained above, under the

Streamlined Procedures, domestic taxpayers are required to pay only a miscellaneous Title 26

offshore penalty of 5% as a compromise for *all* penalties, including these failure-to-file penalties.

In short, under the Streamlined Procedures, taxpayers compromise their penalties for a

significantly lower payment than under the OVDP. [9]

        The remaining question is whether the reduced-value compromise of these several

penalties constitutes a restraint on the assessment or collection of taxes. All of the failure-to-file

penalties listed above are found in Subchapter B of Chapter 68 of the Internal Revenue Code.

Therefore, they are considered taxes for the purposes of the Anti-Injunction Act. *Florida Bankers*

*Ass'n*, 799 F.3d at 168 (considering penalties in Subchapter B of Chapter 68). Accordingly, the

Court concludes that the substantial reduction in the *amount* of the miscellaneous offshore

penalty—from 27.5% of assets under the 2012 OVDP to 5% of assets—in order to compromise

the failure-to-file penalties, among others, constitutes a restraint on the assessment and collection

of unpaid taxes. [10]

---

[9] Other than the several failure-to-file penalties listed above, Defendants have not identified any specific penalties affected by the requested relief. Nor have they provided any basis for the Court to conclude that those unidentified penalties should be treated as taxes under the Anti-Injunction Act. With that in mind, the Court finds no basis to treat these unidentified penalties as taxes.

[10] It is immaterial that, under the Transition Treatment, participants are able to compromise the outstanding penalties for a miscellaneous offshore penalty of only 5% of their foreign assets. It is yet unclear whether Plaintiffs would even qualify for the Transition Treatment. Yet, they seek a judgment allowing them to exit the 2012 OVDP and to participate "directly" in the Streamlined

In response, Plaintiffs focus on the FBAR penalty, arguing that it does not constitute a tax under the Anti-Injunction Act. *See* Pls.' Opp'n at 12-15. But Defendants never argue that the FBAR penalty in fact constitutes a tax. The impact of the requested relief on the IRS's ability to collect the FBAR penalty does not serve as one of the bases for Defendants' argument that this Court is deprived of jurisdiction over this action. Instead, there are other penalties—specifically the accuracy-related and failure-to-file penalties discussed above—that serve as the basis for Defendants' argument. Plaintiffs never discuss those specific penalties, let alone argue that they cannot serve as a basis for depriving this Court of jurisdiction under the Anti-Injunction Act. Plaintiffs also focus on the miscellaneous Title 26 offshore penalty, which they argue that the IRS "made up." But they are mistaking the nature of the miscellaneous penalty. It is not a new penalty that the IRS invented; it is a label that the IRS developed to refer to standard payments required of taxpayers in order to compromise other statutorily-created penalties, including the accuracy and failure-to-file penalties. In effect, it is a substitute for those other penalties. Because those penalties are considered taxes under the Anti-Injunction Act for the reasons explained above, so too is the substitute miscellaneous Title 26 offshore penalty. Finally, Plaintiffs emphasize that the IRS collects a miscellaneous penalty under any of programs involved. But that statement ignores the fact that the miscellaneous penalty is substantially reduced in size under the Streamlined Procedures—5% of foreign assets—compared to 27.5% under the 2012 OVDP.[11] That reduction itself constitutes a restraint on the collection and assessment of unpaid taxes.

---

Procedures. Compl., Relief Requested ¶ D. Therefore, the relevant comparison on this issue is between the 2012 OVDP, outside of the Transition Treatment, and the Streamlined Procedures.

[11] The penalty is 25% under the 2011 ODVP. The reduction of that amount to 5% is also a substantial reduction and constitutes a restraint on the assessment and collection of unpaid taxes.

For these reasons, the Court concludes that the impacts of the requested relief on the ability of the IRS to collect the accuracy and failure-to-file penalties discussed here constitute a restraint on the assessment and collection of unpaid taxes, depriving the Court of jurisdiction over this suit.

### 2.   Submission of Tax Returns and Payments

Defendants next argue that allowing Plaintiffs to switch from the 2012 OVDP to the 2014 Streamlined Procedures would restrain the assessment and collection of unpaid taxes because the IRS would only receive tax returns for *three* years, rather than *eight* years under the 2012 OVDP. The Court agrees.

As explained above, participants in the 2012 OVDP, including the Transition Treatment under the OVDP, are required to file *eight* years of tax returns and to pay the associated taxes. By contrast, participants in the 2014 Streamlined Procedures are only required to file *three* years of tax returns and to pay the associated taxes. Under the Streamlined Procedures, Plaintiffs are correct that the IRS is not barred from seeking the tax returns for the previous five years. However, the burden on the IRS of taking affirmative action to ensure that those returns are filed and that the associated taxes are paid is higher than the burden under the 2012 OVDP, under which the filing of eight years of tax returns and the submission of tax payments for all of those years is a condition of participation. As noted above, Plaintiffs have never claimed that they have paid all of the taxes, interest, and penalties associated with the five years under the OVDP that are not covered by the Streamlined Procedures. Nor are they willing to undergo IRS examination with respect to those five years—which is required as a condition for exiting the OVDP. *See* Revised 2012 OVDP FAQs, No. 51. Accordingly, Plaintiffs' requested relief would shift the burden to the IRS to collect the unpaid taxes, as well as any associated penalties and interest, that

20

are due for the five years that are not covered by the Streamlined Procedures. Accordingly, the Court has little trouble concluding that relief allowing Plaintiffs to switch from a program under which *eight* years of returns are filed to one under which only *three* years of returns are filed constitutes a restraint on the assessment and collection of unpaid taxes.

### 3. Shifting Burden of Proof Regarding Willfulness

Taxpayers that qualify for the Transition Treatment within the OVDP or directly enter the 2014 Streamlined Procedures must certify, under the penalty of perjury, that they acted non-willfully with respect to the related tax activities. *See* Streamlined Procedures (Overview); Transition FAQs, FAQ No. 6 ("[Y]ou must provide to the IRS … a written statement in the appropriate certification form that would be required under the Streamlined Filing Compliance Procedures signed under penalty of perjury certifying their non-willfulness with respect to all foreign activities/assets, specifically describing the reasons for the failure to report all income"). Even though the requirement that taxpayers certify non-willfulness is common to the Transition Treatment and to direct participation in the 2014 Streamlined Procedures, the IRS's treatment of this information is materially different. Applications do not automatically qualify for the Transition Treatment. Rather, "[b]efore transitional treatment is given, the IRS must agree that the taxpayer is eligible for transitional treatment and must agree that the available information is consistent with the taxpayer's certification of non-willful conduct." *Id.,* FAQ No. 7. In making the determination about whether to allow Transitional Treatment for a particular taxpayer, the IRS assesses this information along with other information submitted. *Id.,* FAQ No. 8. In short, before OVDP participants can receive the benefits of the Transition Treatment, the participants must convince the IRS that their activity was not willful. By contrast, to enter the Streamlined Procedures directly, the taxpayer must simply certify non-willfulness. *See* Streamlined

Procedures (U.S.). The returns filed are then subject to auditing under the standard IRS

procedures, which necessarily places the burden on the IRS for showing willfulness. *See*

Streamlined Procedures (Overview) ("Returns submitted under either the Streamlined Foreign

Offshore Procedures or the Streamlined Domestic Offshore Procedures will not be subject to IRS

audit automatically, but they may be selected for audit under the existing audit selection

processes applicable to any U. S. tax return and may also be subject to verification procedures in

that the accuracy and completeness of submissions may be checked against information received

from banks, financial advisors, and other sources."). Accordingly, the relief that Plaintiffs

request—directly entering the 2014 Streamlined Procedures rather than being subject to the

Transition Treatment—would shift the burden to the IRS for finding willfulness before it could

levy associated taxes, penalties, and interest.

Moreover, Defendants emphasize that Plaintiffs are receiving the benefits of assurances

that the IRS will not refer them for criminal prosecution, which are only available under the

OVDP but not under the Streamlined Procedures. *See* Defs.' Mot. at 13. Yet, Plaintiffs have not

agreed to relinquish these benefits, even though they seek "direct" entry to the Streamlined

Procedures, which do not offer the benefit of criminal non-prosecution letters. *See* Pls.' Opp'n at

20, 31.

Plaintiffs argue that the burden of proof for willfulness is established by statute and

cannot be modified by agency practice. But the statute sets the burden of proof for willfulness in

the litigation context. No litigation as to willfulness is involved here. Instead, what is involved is

two different voluntary disclosure schemes set up by the IRS. For direct entry into the

Streamlined Procedures, the IRS has set up the scheme such that taxpayers can participate upon

certification of non-willfulness; they need not convince the IRS of their non-willfulness before

receiving the benefits of this program. Instead, the IRS must establish willfulness before assessing additional taxes, penalties, and interest that may not otherwise be due under the Streamlined Procedures. By contrast for OVDP participants to receive the Transition Treatment, *they* must convince the IRS, through the documentation they submit, of the non-willfulness of their conduct. This difference is significant because the additional effort to show non-willfulness could easily hamper the IRS in its tax collection efforts, and because the additional burden on the IRS of proving willfulness—a precondition to certain additional taxes and penalties—restrains the assessment and collection of those unpaid taxes.

Plaintiffs are right that the two programs are established by the IRS. But that fact is immaterial. Plaintiffs are seeking a legal judgment allowing them to switch from one of those programs to the other contrary to the rules established for those programs. Because a greater burden is placed on the IRS under the Streamlined Procedures as compared to the Transition Treatment, a judgment allowing Plaintiffs to be considered directly under the 2014 Streamlined Procedures necessarily restrains the assessment and collection of unpaid taxes. Therefore, the Court concludes that the impact of the requested relief on the burden regarding willfulness is yet another reason that this Court is deprived of jurisdiction over this suit under the Anti-Injunction Act.

### 4.   Plaintiffs' Additional Responses

In addition to Plaintiffs' arguments addressing the three specific bases for Defendants' claim that Plaintiffs seek to restrain the assessment and collection of taxes through this suit, Plaintiffs present several additional arguments as to why there is no restraint on the assessment or collection of taxes in this case and, therefore, why this case is not barred by the Anti-Injunction Act. The Court concludes that none of those arguments have merit.

First, Plaintiffs claim that they have paid the three years of tax, interest, and penalties required under the Streamlined Procedures. (They never argue that they have paid all of the taxes, interest, and penalties due for the eight years encompassed by the OVDP.) On this basis, they argue that there is nothing left for the IRS to collect and, as a result, the Anti-Injunction Act is applicable. For this argument, they rely on *Cohen v. United States*, in which the D.C. Circuit sitting en banc concluded that the claims in that case did not "seek to restrain the assessment or collection of any tax" because, in part, "the IRS previously assessed and collected the excise tax at issue." 650 F.3d at 725. The facts in that case bear no resemblance to those in the case before this Court. In that case, "the money [was] in the U.S. treasury," and the "legal right to it has been previously determined." *Id.* Not so here. In support of this argument, Plaintiffs only state that they have paid the tax, interest, and penalties that would be due under the *Streamlined Procedures*—that is, for three years. But they never state that they have paid the taxes, penalties, and interest for the previous five years, which are required to be paid under the 2012 OVDP. Plaintiffs are not simply seeking entry into the Streamlined Procedures, as if writing on a blank slate; rather, they are seeking to transition from the OVDP into the Streamlined Procedures. Therefore, the entire eight years that are relevant under the OVDP are also relevant to the question of whether this suit seeks to restrain the assessment or collection of unpaid taxes. Because Plaintiffs have *never* claimed, let alone shown, that the "the money is in the U.S. treasury," *id.* at 725, with respect to *all* eight years at issue, this argument fails.

Second, Plaintiffs argue that the Anti-Injunction Act does not apply to this challenge to the Transition Treatment because it is a challenge to a procedural rules for sorting between two IRS programs. Once again, the cases on which Plaintiffs rely bear no resemblance to the case at hand. In *Seven-Sky v. Holder*, the D.C. Circuit considered a challenge to the individual mandate

of the Affordable Care Act. 661 F.3d 1, 9 (D.C. Cir. 2011) *abrogated by Nat'l Fed'n v. Sebelius*, 132 S. Ct. 2566 (2012). The court held that the challenge was not barred by the Anti-Injunction Act because the "shared responsibility payment" was separate and distinct from the individual mandate and because the suit was aimed at the mandate, rather than at the payment. *Id.* In this case, the relief Plaintiffs seek would directly restrain the assessment and collection of unpaid taxes, as amply demonstrated above. It cannot be characterized as a challenge to "regulatory requirements that bear no relationship to tax revenues or enforcement." *Id.* Indeed, the *Seven-Sky* court noted that the Anti-Injunction Act "bars suits that interfere with ancillary functions to tax collection." *Id.* at 10. While "[m]andating the purchase of health insurance is plainly not such a function," the voluntary disclosure programs subject to this suit are far *more* than ancillary to tax collection. *Id.* Therefore, they are encompassed within the jurisdictional bar of the Anti-Injunction Act—unlike the challenge to the individual mandate in *Seven-Sky*. So, too, Plaintiffs' reliance on *Foodservice and Lodging Institute, Inc. v. Regan*, 809 F.2d 842 (D.C. Cir. 1987), is wholly unavailing. In *Foodservice*, the D.C. Circuit concluded that a challenge to a regulation imposing certain requirements on submission of data to assess compliance with tip requirements was not barred by the Anti-Injunction Act. *Id.* at 846. The court reasoned that "[o]n its face, the regulation does not relate to the assessment or collection of taxes, but to IRS efforts to determine the extent of tip compliance in the food and beverage industry." *Id.* This case could not be more dissimilar. On their face, the rules challenged here pertain wholly to the assessment and collection of unpaid taxes, not to any unrelated regulatory goals. For all of these reasons, Plaintiffs' argument that this case is a challenge to a regulatory command untouched by the Anti-Injunction Act is wholly unsuccessful.

Third, Plaintiffs argue that that relief requested in this case does not restrain the assessment or collection of taxes because the IRS is not prohibited from seeking tax returns and payments from all eight years that would be covered by the 2012 OVDP. Once again, notably, Plaintiffs *never* claim that they have actually paid taxes and associated penalties for all eight of those years. The Court explained above why releasing Plaintiffs from the obligation to file tax returns and pay taxes on the first five of those eight years—and only requiring returns and payments for the last three years—constitutes a restraint on the assessment and collection of unpaid taxes. Plaintiffs offer three additional arguments why that is not the case. To the extent the Court has not addressed these arguments above, the Court explains here why none of Plaintiffs' arguments are persuasive.

Plaintiffs present a cursory argument, with no legal support whatsoever, that Defendants have somehow waived reliance on the Anti-Injunction Act because they created the multiple voluntary disclosure programs that are subject to dispute in this case. There is no basis for this argument. Defendants created multiple disclosure programs, with distinct eligibility rules for each, as well as rules for the hybrid Transition Treatment. By doing so, they in no way waived their ability to rely on the Anti-Injunction Act to fend off this challenge, which is targeted at the very gatekeeping rules that establish who may participate in each program.

Next, Plaintiffs argue that the D.C. Circuit and the Supreme Court have foreclosed the theory that the entire tax system should be consider a "single mechanism" for the purposes of applying the Anti-Injunction Act. *Cohen*, 650 U.S. at 726 (citing *Hibbs v. Winn*, 542 U.S. 88, 102, 104 (2004)). This entire argument is inapplicable because the Defendants have not pressed an argument based on a "single mechanism" theory. Instead, they argue that there is no jurisdiction over this case because it directly seeks to restrain the assessment and collection of

unpaid taxes. As explained above, the Court agrees with Defendants that the relief requested in this case would restrain the assessment and collection of unpaid taxes, and therefore, Plaintiffs' argument regarding a single mechanism theory is inapposite.

Lastly, Plaintiffs rely on the Supreme Court's recent interpretation of the Tax Injunction Act in *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015), to argue for a narrower meaning of the word "restrains," as used in the Anti-Injunction Act. This argument is unavailing because the law in the two cases is different and because the facts are distinguishable.

With respect to the law, in *Direct Marketing*, the Supreme Court was interpreting the Tax Injunction Act, "which provides that federal district courts 'shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law.' " *Id.* (quoting 28 U.S.C. § 1341). That case did not concern either the Anti-Injunction Act or the Declaratory Judgment Act. Indeed, although the Supreme Court explained that it looks to federal law for the interpretation of the Tax Injunction Act, *id.* at 1129, its analysis focused on the specific language of the Tax Injunction Act, *id.* at 1132-33, which differs in material respects from the language of the Anti-Injunction Act. Specifically, while the Tax Injunction Act forbids "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax," the Anti-Injunction simply forbids suits "restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). For the Supreme Court, it was important that the word "restrain" kept company with "suspend" and "enjoin" in the Tax Injunction Act. 135 S. Ct. at 1132. The Supreme Court explained that the words "suspend" and "enjoin" "refer to different equitable remedies that restrict or stop official action to varying degrees, strongly suggesting that 'restrain' does the same." *Id.* Under the Anti-Injunction Act, the word "restrain" keeps no such company and, therefore, no such inference would be either possible or proper.

With respect to the facts, *Direct Marketing* concerned a Colorado state law that imposed notice and reporting obligations regarding sales taxes on certain retailers. *Id.* at 1128. The Supreme Court concluded that the notice and reporting requirements were separate and distinct from the enumerated actions of "the [1] assessment, [2] levy or [3] collection of any tax" and therefore not subject to the Tax Injunction Act's jurisdictional bar that applies to such activities. *Id.* at 1131 (alterations added). The Supreme Court concluded that the notice and reporting requirements merely inhibited, but did not "restrain" the "assessment, levy or collection of any tax." *Id.* at 1133. Once again, notwithstanding Plaintiffs' contentions to the contrary, this case could not be more different. As demonstrated thoroughly above, Plaintiffs seek relief that would directly restrain the assessment and collection of unpaid taxes by presenting a challenge to the eligibility rules for the IRS's voluntary disclosure program, which set out different schemes for collecting unpaid taxes and associated penalties, and by seeking a judgment allowing them entry to a program from which they would otherwise be barred. *Direct Marking* is wholly distinguishable and, accordingly, provides no basis to disturb the conclusion that this Court is deprived of jurisdiction over this case by the Anti-Injunction Act.

*        *        *

In sum, the Court concludes that, for all of the reasons discussed above, this case constitutes a suit "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Therefore, if no exception to that rule is applicable, this Court is deprived of jurisdiction over this action. The Court now turns to Plaintiffs' argument that just such an exception applies in this case.

**B.  No Alternative Remedy Available**

The Anti-Injunction Act "does not apply at all where the plaintiff has no other remedy for its alleged injury." *Z Street*, 791 F.3d at 31. As the Supreme Court explained in *South Carolina v. Regan*, the "Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." 465 U.S. 367, 378 (1984). "Put another way, 'the Act was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims.' " *Z Street*, 791 F.3d at 29 (quoting *South Carolina*, 465 U.S. at 381).

Defendants identify two alternative remedies that Plaintiffs can pursue: specifically, to pursue a settlement with the IRS independent of the established voluntary disclosure programs and, if those settlement talks fail, to pay the full assessed liabilities and seek a refund through a refund suit. That is, it is not necessary to participate in one of the programs established by the IRS to pursue a settlement with the IRS. Although Plaintiffs seek the specific relief regarding taxes and penalties that would be afforded them if they were allowed to directly enter the 2014 Streamlined Procedures, they are not barred from seeking such benefits through separate negotiations with the IRS outside the OVDPs in which they are currently enrolled. *See* Defs.' Reply at 12. In short, as an alternative to the remedies sought through this action, Plaintiffs may negotiate directly with the IRS.

If those negotiations do not yield the results they seek, Plaintiffs may avail themselves of a second alternative opportunity to pursue these results. They can opt-out of the OVDP, allow the IRS to determine their liabilities by examination, pay the assessed liabilities, and file an administrative claim for a refund for the difference between the liability determined and the amount that would be due under the Streamlined Procedures; if that administrative refund claim is denied, they may then file a refund suit in federal court. *See* Revised 2012 OVDP FAQs, No.

51 (explaining opt-out process); 26 U.S.C. § 7422(a) (setting out conditions for federal suit for refund).

Because Plaintiffs are equipped with these alternative remedies, they do not face circumstances like those faced by the State of South Carolina in *South Carolina*. 465 U.S. at 380. As the D.C. Circuit has explained, "because South Carolina paid no taxes, it was 'unable to utilize any statutory procedure to contest the constitutionality of [the tax].' " *Z Street*, 791 F.3d at 29 (quoting *South Carolina*, 465 U.S. at 380) (alteration in original). In other words, the State of South Carolina had *no* alternatives whatsoever. Here, by contrast, the taxpayers themselves may engage in settlement negotiations with the IRS in order to pursue the relief that is substantively equivalent to the relief they seek through this suit. And, if any such attempts fail, they may follow the procedure outlined above to pay the assessed liabilities and file a suit in federal court for a refund.

Plaintiffs emphasize that they may not *now* file a suit in federal court (1) because they have not been issued a notice of deficiency and (2) because they claim that they are not *actually* seeking the refund of any taxes they have already paid—as they claim they have paid the amount that would be required under the Streamlined Procedures. But once again they ignore the *five* years prior to those covered by the Streamlined Procedures that are within the eight-year framework of the OVDP. Plaintiffs have never claimed that they have paid all liabilities that would be due on a full examination of all of those years—either during the years in which the respective taxes were owed or in the process of rectifying their prior errors. Upon examination and payment of liabilities for *all* of those years, they could seek any refund compared to the amounts that would be due under the Streamlined Procedures—or as compared to whatever amount they claim they should be due under the applicable law. The Court concludes that these

remedies are both available and adequate with respect to the relief Plaintiffs seek in this court. *See Cohen*, 650 F.3d at 733 (requiring an alternative remedy to be "adequate").

Because Plaintiffs possess adequate alternative remedies to the current suit, the Court concludes that this suit remains within the ambit of the jurisdiction-stripping provision of the Anti-Injunction Act and, concomitantly, within the tax exception to the Declaratory Judgment Act). Therefore, the Court need not consider Defendants' argument that Plaintiffs have no legal right to settlement terms offered to other taxpayers.

*        *        *

The details of the schemes at issue in this case are complex, but it is useful to close by returning to the core of this case. Plaintiffs claim that they have been harmed because "the IRS's failure to provide a direct method of entry into the 2014 SFCP imposed upon the Plaintiffs a *greater offshore penalty, exposure to additional civil penalties, increased filing burdens, a disparate standard of review, and a longer case-review time (and thus attorneys' fees)* as compared to other similarly situated applicants." Compl. ¶ 107 (emphasis added). And Plaintiffs seek, through this case, a judgment allowing them to participate in the 2014 Streamlined Procedures under the same terms as an applicant who had not previously participated in another related IRS voluntary disclosure program. *See id.*, Request for Relief, ¶ D. That is, they seek to undo the alleged harm they claim was caused by their inability to enter the 2014 Streamlined Procedures directly: "greater offshore penalty, exposure to additional civil penalties, increased filing burdens, a disparate standard of review, and a longer case-review time (and thus attorneys' fees) as compared to other similarly situated applicants." *Id.* ¶ 107. Notably, Plaintiffs *never* claim that they have paid all of the taxes and associated penalties owed under all of the tax years covered by the programs at issue in this case. Notwithstanding Plaintiffs' attempts to minimize

31

the effect that this lawsuit would have on their bottom line and on the public fisc, they are not simply bringing this lawsuit because they are philosophically dismayed by what they claim was the unlawful promulgation of the "Transition Rules." It is not simply that they seek to have that putative legal wrong remedied in the abstract. They are seeking for that wrong to be remedied as it applies to them, with all of the attendant effects on the taxes, penalties, and other payments that they must make to the United States Treasury via the IRS.

With that background, the question before the Court is whether the unwinding of the impacts alleged by Plaintiffs' through the specific relief they request would restrain the assessment or collection of unpaid taxes. Because the Court answers that question in the affirmative, and because Plaintiffs are not seeking relief for which they would have no adequate alternative remedy, this Court is deprived of subject matter jurisdiction over this case by the Anti-Injunction Act and by the tax exception to the Declaratory Judgment Act. Accordingly, the Court dismisses this case for lack of subject matter jurisdiction.[12]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [9] Motion to Dismiss. The Court dismisses this case for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: July 25, 2016

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[12] As a result, the Court does not reach Defendants' alternative argument that Plaintiffs may not bring this case under the Administrative Procedure Act because the challenge addresses matters that are committed to the IRS's discretion as a matter of law.